O

1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10

11  KATHRYN M. MALONE, AN    )   Case No. EDCV 09-01980
    INDIVIDUAL; EDWARD M.    )   VAP(DTBx)
12  MALONE, AN INDIVIDUAL,   )
                             )   **ORDER GRANTING MOTION FOR**
13            Plaintiff,     )   **SUMMARY JUDGMENT**
                             )
14      v.                   )   **[Motion filed on September**
                             )   **20, 2010]**
15  MARRIOTT INTERNATIONAL,  )
    INC., A CORPORATION;     )
16  MARRIOTT HOTEL SERVICES, )
    INC., A CORPORATION;     )
17  DOES 1 THROUGH 10,       )
    INCLUSIVE,               )
18                           )
            Defendants.      )
19  _____

20      On September 20, 2010, Defendants Marriott

21  International, Inc. and Marriott Hotel Services, Inc.

22  (collectively, "Defendants") filed a Motion for Summary

23  Judgment ("Motion") against Plaintiff Kathryn Malone

24  ("Mrs. Malone") and Plaintiff Edward Malone ("Mr.

25  Malone," collectively, "Plaintiffs").  Plaintiffs filed

26  their Opposition to the Motion for Summary Judgment

27  ("Opposition") on September 27, 2010.  The Court has

28  considered all papers filed in support of, and opposition

to, the Motion and for the reasons set forth below, the Court GRANTS the Motion.

## I. BACKGROUND

**A.  Plaintiffs' Failure to Respond Adequately to Defendants' Statement of Uncontroverted Facts**

Defendants filed a Statement of Uncontroverted Facts ("Defendants' SUF") along with the Motion.  (Doc. No. 26.)  Under Local Rule 56-3(b), when determining a motion for summary judgment, the Court will "assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are . . . controverted by declaration or other written evidence filed in opposition to the motion."

Local Rule 56-2 sets out the requirements for Plaintiffs opposing a Defendant's statement of facts, stating that they must submit a response to each of the Defendant's factual statements, and cite admissible evidence disputing them.  Plaintiffs submitted a Response in Opposition to Defendants' Statement of Uncontroverted Facts ("Plaintiffs' SUF") along with their Opposition. (Doc. No. 31.)  Plaintiffs did not, however, adequately support their statements in opposition with evidence. Instead, Plaintiffs made a few unsubstantiated or immaterial assertions and repeated them throughout their

1  SUF.  As a result, the material facts as claimed by
2  Defendants may be admitted to exist without controversy
3  and adopted by the Court outright.[1]
4
5      Therefore, the matters set forth in Defendants' SUF
6  are deemed to exist without controversy, and the
7  statement is hereby adopted by the Court.
8
9  **B.   Uncontroverted Facts**
10     On November 3, 2007, Plaintiffs went golfing on the
11  Valley golf course at Defendants' JW Marriott Resort and
12  Spa located in Palm Desert, California ("Palm Desert
13  Marriott").  (Defs.' SUF ¶ 1; Compl. ¶ 9.)  After putting
14  their golf balls into the course's fifth hole, Plaintiffs
15  walked back to their golf cart, which was parked on a
16  nearby path.  (Defs.' SUF ¶¶ 2-3; Compl. ¶ 9.)  The route
17  back to the golf cart required Plaintiffs to walk over
18  the rough, an area of the golf course where the grass is
19  kept longer than it is on the putting green.  (Defs.' SUF
20  ¶ 4; Compl. ¶ 9.)  While walking on an area of the rough
21  that slopes downhill, Mrs. Malone stepped in a
22  depression, or hole, in the grass and fell, injuring
23  herself.  (Defs.' SUF ¶ 4; Compl. ¶ 9.)
24
25      _____
        [1] If at summary judgment a genuine triable issue
26  exists, it is the nonmoving party's burden to "identify
    that issue and support it with evidentiary materials,
27  without the assistance of the district court judge."
    Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v.
28  Louisiana Hydrolec, 854 F.2d 1538, 1545 (9th Cir. 1988).

1    Mr. Malone had been walking ahead of his wife at the
2  time of her fall.  Neither of them saw the hole before
3  Mrs. Malone fell into it, as it was concealed by the
4  grass growing in and around it.  (Defs.' SUF ¶¶ 5-6;
5  Compl. ¶ 9)  Shortly after his wife's accident, Mr.
6  Malone went to look for the depression and located it by
7  stepping around the area with his feet for two or three
8  minutes.  (Defs.' SUF ¶ 11.)
9

10    Defendants' groundskeepers maintain the grass on the
11  rough in the area where Mrs. Malone fell at a height of
12  1¼ inches by mowing the area four times per week.
13  (Defs.' SUF ¶ 34.)  Between September 24, 2007, and
14  October 27, 2007, the Valley golf course was closed while
15  all of the grass was cut short, de-thatched (where the
16  matted layer of dead or dry grass material is removed
17  both by machine and by hand), and reseeded.  (Defs.' SUF
18  ¶¶ 28-32.)  During this process, while the grass on the
19  course was shorter than usual and holes or divots in the
20  grass were more visible, an employee walked around the
21  course and filled in all holes or depressions he could
22  see.  (Id.)
23

24    The Valley golf course covers 92.12 acres of land, of
25  which the fifth hole covers 4.46 acres.  (Defs.' SUF ¶¶
26  19-20.)  Defendants' groundskeepers perform daily upkeep
27  on every hole of the Valley golf course, doing such tasks
28

4

1 as mowing grass, raking sand traps, and handling turf
2 irrigation.  (Defs.' SUF ¶ 25.)  In the week leading up
3 to Mrs. Malone's fall, the area around the fifth hole was
4 maintained by the groundskeepers on a daily basis.
5 (Defs.' SUF ¶¶ 25, 33, 36.)

6

7    Defendants do not have any employee at the Palm
8 Desert Marriott whose sole job is to look for dangerous
9 conditions on the course.  (Pls.'s SUF ¶ 26.)  Instead,
10 all of Defendants' groundskeepers are responsible for
11 looking for holes, depressions, or divots on the golf
12 course when they are performing their daily maintenance
13 work, and they are responsible for immediately fixing or
14 reporting any holes they find.  (Defs.' SUF ¶ 26.)

15

16                    **II. LEGAL STANDARD**
17    A motion for summary judgment shall be granted when
18 there is no genuine issue as to any material fact and the
19 moving party is entitled to judgment as a matter of law.
20 Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>,
21 477 U.S. 242, 247-48 (1986).  The moving party must show
22 that "under the governing law, there can be but one
23 reasonable conclusion as to the verdict." <u>Anderson</u>, 477
24 U.S. at 250.

25

26    Generally, the burden is on the moving party to
27 demonstrate that it is entitled to summary judgment.
28

1   Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998);

2   Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707

3   F.2d 1030, 1033 (9th Cir. 1983).  The moving party bears

4   the initial burden of identifying the elements of the

5   claim or defense and evidence that it believes

6   demonstrates the absence of an issue of material fact.

7   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

8

9       Where the non-moving party has the burden at trial,

10  however, the moving party need not produce evidence

11  negating or disproving every essential element of the

12  non-moving party's case.  Id. at 325.  Instead, the

13  moving party's burden is met by pointing out that there

14  is an absence of evidence supporting the non-moving

15  party's case.  Id.

16

17      The burden then shifts to the non-moving party to

18  show that there is a genuine issue of material fact that

19  must be resolved at trial.  Fed. R. Civ. P. 56(e);

20  Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.  The

21  non-moving party must make an affirmative showing on all

22  matters placed in issue by the motion as to which it has

23  the burden of proof at trial.  Celotex, 477 U.S. at 322;

24  Anderson, 477 U.S. at 252; see also William W. Schwarzer,

25  A. Wallace Tashima & James M. Wagstaffe, Federal Civil

26  Procedure Before Trial § 14:144 (2010).  A defendant has

27  the burden of proof at trial with respect to any

28

1  affirmative defense.  <u>Payan v. Aramark Mgmt. Servs. Ltd.</u>
2  <u>P'ship</u>, 495 F.3d 1119, 1122 (9th Cir. 2007).

3

4      A genuine issue of material fact will exist "if the
5  evidence is such that a reasonable jury could return a
6  verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at
7  248.  In ruling on a motion for summary judgment, the
8  Court construes the evidence in the light most favorable
9  to the non-moving party.  <u>Barlow v. Ground</u>, 943 F.2d
10 1132, 1135 (9th Cir. 1991); <u>T.W. Elec. Serv. Inc. v. Pac.</u>
11 <u>Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir.
12 1987).

13

14                    **III. DISCUSSION**
15      Defendants seek summary judgment in their favor on
16 Plaintiffs' three claims for:  (1) premises liability
17 under a theory of negligence; (2) negligent infliction of
18 emotional distress; and (3) loss of consortium.  (Compl.
19 at 1.)  Defendants satisfied their initial burden of
20 demonstrating they are entitled to summary judgment on
21 the negligence claim because of their lack of actual or
22 constructive notice of the depression in the grass.
23 Plaintiffs have failed to demonstrate the existence of a
24 genuine issue of material fact on the notice issue, which
25 encompasses the question of whether or not Defendants had
26 reasonable inspection policies.  Given these facts,
27 Plaintiffs' negligence claim fails.  Without the
28

underlying negligence claim, Plaintiffs' second and third
claims for negligent infliction of emotional distress and
loss of consortium also fail.  Therefore, Defendants are
entitled to summary judgment in their favor on all claims
in Plaintiffs' Complaint.

**A.**  **Plaintiffs Fail to Demonstrate a Genuine Issue of Material Fact Exists as to the Premises Liability Negligence Claim**

Defendants assert that summary judgment is
appropriate as to Plaintiffs' first claim for relief,
arguing that:  (1) this is a primary assumption of risk
case and therefore Defendants owed no duty of care to
Plaintiffs; and (2) even if Defendants did owe a duty to
Plaintiffs, Defendants are not liable here because they
had no actual or constructive notice of the depression
into which Mrs. Malone fell.  (Mot. at 2.)  Defendants'
first argument lacks merit as it misstates the law
regarding assumption of risk; their second basis for
summary judgment on this claim is supported by the
uncontroverted facts, however.

Plaintiffs argue that Defendants were negligent in
maintaining their premises.  In order to establish her
negligence claim, Mrs. Malone must show:  (1) a legal
duty to use due care; (2) a breach of that duty; and (3)
the breach as the proximate or legal cause of the

resulting injury.  <u>See, e.g.</u>, <u>Jackson v. Ryder Truck</u>
<u>Rental, Inc.</u>, 16 Cal. App. 4th 1830, 1837 (1993) (citing
6 Witkin, Summary of Cal. Law, <u>Torts</u> § 732 (9th ed.
1988)).

## 1.   Defendants Owed a Duty of Care to Plaintiffs to Provide a "Reasonably Safe Golf Course"

California premises liability law follows a two-tiered structure which defines the duties between parties based on their relationship and the activity at issue. <u>Knight v. Jewett</u>, 3 Cal. 4th 296, 314-15 (1992) (clarifying California law on the issue of assumption of risk in light of the recent adoption of comparative fault principles).

In the first category of case, called primary assumption of risk, a defendant owes no duty of care to a plaintiff because the plaintiff is considered to have voluntarily assumed the relevant risks when he or she chose to do certain activities.  <u>Id.</u>  In a secondary assumption of risk case, a defendant "does owe a duty of care to the plaintiff," although the risk assumed by the plaintiff is still taken into account.  <u>Id.</u>  The issue turns on "whether the defendant had a legal duty to avoid such conduct or to protect the plaintiff against a particular risk of harm."  <u>Id.</u> at 316-17.

1   Under California law, golf course operators fall
2   under the secondary assumption of risk rubric.[2]  Morgan
3   v. Fuji Country USA, Inc., 34 Cal. App. 4th 127, 134
4   (1995) (citing Knight, 3 Cal. 4th at 316-17).  Following
5   this standard, a golf course operator owes a duty of care
6   to a golfer "to provide a reasonably safe golf course," a
7   duty which "requires the golf course owner to minimize
8   the risks without altering the nature of the sport."  Id.
9   Thus, Defendants' argument that they owed no duty of care
10  to Plaintiffs fails.

11

12      **2.   Defendants Did Not Breach their Duty of Care**
13          **Towards Plaintiffs Because Defendants Acted**
14          **Reasonably**

15   The next issue is whether Defendants breached their
16  duty of maintaining a "reasonably safe golf course."  In
17  this inquiry, it is relevant whether Defendants did know
18  or should have known about the depression in the grass.
19  In order "to impose liability for injuries suffered by an
20  invitee due to a defective condition of the premises, the

21  _____

22      [2] Defendants inaccurately characterize this as a
    primary assumption of risk case while simultaneously
23  citing Morgan v. Fuji Country USA, Inc., 34 Cal. App. 4th
    127 (1995), a case about a golf course operator which
24  clearly states that such situations fall under the
    secondary assumption of risk rubric.  (Mot. at 15.)
25  Primary assumption of risk would be applicable if this
    case were between two golfers or participants in a sport,
26  rather than between a participant and a facility owner.
    See, e.g., Dilger v. Moyles, 54 Cal. App. 4th 1452, 1454-
27  55 (1997) (citing Knight, 3 Cal. 4th at 318-20) (granting
    summary judgment for defendant golfer who had hit a golf
28  ball which struck plaintiff golfer in the head).

1   owner or occupier must have either actual or constructive
2   knowledge of the dangerous condition or have been able by
3   the exercise of ordinary care to discover the condition."
4   Ortega v. Kmart Corp., 26 Cal. 4th 1200, 1206 (2001)
5   (internal citations omitted) (holding that the evidence
6   supported a finding that defendant store had failed to
7   inspect the premises within a reasonable period of time).
8
9        Plaintiffs claim that Defendants created the hole
10  that Mrs. Malone fell into, and thus Defendants had
11  actual notice of it.  (Opp. at 16.)  Neither party knows
12  what caused the hole or depression to develop, although
13  both sides agree that it may have been caused by a gopher
14  tunnel in the area[3].  The issue of actual notice,
15  however, concerns whether or not Defendants actually knew
16  of the depression on the golf course before Mrs. Malone
17  fell.  None of the evidence in the record supports
18  Plaintiffs' contention that they did.
19
20
21
22
        [3] Despite Plaintiffs' assertions to the contrary, the
23  parties do not agree upon the size of the hole.
    Plaintiffs' Opposition states that the hole was "six (6)
24  inches in depth and eighteen to twenty (18-20) inches in
    diameter."  (Opp'n at 1, 5, 15.)  The language Plaintiffs
25  reference from the Deposition of Albert Perez shows,
    however, that Mr. Perez measured the hole after Mrs.
26  Malone's fall and does not remember the hole being that
    large.  (See Perez Dep. at 244-46.)  While the size of
27  the hole is thus a disputed fact, there is no support in
    the record that the hole is as large as Plaintiffs
28  assert.

                                11

Plaintiffs next claim that Defendants do not have "reasonable inspection policies" because Defendants do not have "a single employee with any specific training or specific job duties to look for dangerous conditions or dangerous holes on the golf course." (Pls.'s SUF ¶ 26.) Plaintiffs cite no legal authority to support this definition of reasonableness as it relates to Defendants' duty. Additionally, Plaintiffs do not contest the fact that Defendants had a team of groundskeepers who continually monitored the eighteen-hole golf course, all of whom were responsible for discovering and fixing any holes or depressions they found on the course. (Defs.' SUF ¶ 26.)

Furthermore, it is uncontested that the hole was not visible when Mrs. Malone fell in it because the grass in the hole had grown to a height even with the surrounding grass. Mr. Malone was unable to find the hole for two or three minutes even when he knew of its location. (Defs.' SUF ¶ 11.) Thus, in order to discover the hole into which Mrs. Malone fell, Defendants' groundskeepers would have been required to inspect every inch of the ninety-two acre golf course on hand or foot every day. Such a requirement would go beyond what can reasonably be expected of a landowner, even one who anticipates visitors on its land.

1    Plaintiffs also assert that evidence of Defendants'
2    negligence comes from the fact that they were "in
3    violation of Marriott's own rodent policy." (Opp'n at 8,
4    19.)  The policy in issue, which consist of two lines in
5    one of Defendants' manuals, states that "[n]o rodent
6    burrows shall be in play areas" and "[a]nnual control
7    programs shall be in place and in use with records
8    properly kept." (Id.)  Plaintiffs' argument that
9    Defendants violated their own policy fails both on the
10   facts and the law.

11

12   First, the statement that there should be no rodent
13   burrows in play areas is clearly a directive that
14   Defendants' groundskeepers sought to enforce.  The Palm
15   Desert Marriott's Director of Grounds Albert Perez stated
16   in his deposition that if a rodent was found on the
17   grounds, the issue was immediately addressed at daily
18   meetings of the entire grounds crew.  (Perez Dep. at
19   249.)  He also stated that he took courses dealing with
20   rodent control and would report back on those courses
21   with his staff.  (Id.)  In light of this behavior, the
22   lack of documentation of an annual rodent control program
23   is not the clear evidence of negligence that Plaintiffs
24   suggest.

25

26   Second, as a matter of law, the rodent policy in
27   question does not present "a specific indication of the
28

1   employer's reconciliation of the conflict between maximum
2   efficiency in operations and maximum safety to the
3   public."  Dillenbeck v. City of Los Angeles, 69 Cal. 2d
4   472, 479 (1968) (holding that safety rules defining
5   appropriate speed limits for police vehicles could be
6   admitted as evidence of due care).  Defendants' policy
7   does not identify a precise standard of care that
8   Defendants breached, but instead identifies a generalized
9   area of concern that Defendants attend to on an ongoing
10  basis.

11

12      The issue of whether Defendants acted reasonably is a
13  question of law for the Court.  See, e.g., Scott v.
14  Harris, 550 U.S. 372, 381 n.8 (2007) ("At the summary
15  judgment stage, however, once we have determined the
16  relevant set of facts and drawn all inferences in favor
17  of the nonmoving party to the extent supportable by the
18  record . . . the reasonableness of [defendant's actions]
19  . . . is a pure question of law.")  The Court finds that
20  Defendants acted reasonably to fulfill their duty to
21  provide a reasonably safe golf course to their patrons.
22  To allow Plaintiffs to recover from Defendants in these
23  circumstances would place too great a burden on facility
24  owners of all types.  Defendants' motion for summary
25  judgment on the issue of negligence is thus granted.
26
27
28

1   **B.   Plaintiffs Fail to Demonstrate a Genuine Issue of**
2         **Material Fact Exists as to the Negligent Infliction**
3         **of Emotional Distress Claim**

4         Under California law, recovery on a negligent
5   infliction of emotional distress claim is available if
6   "the emotional distress arises out of the defendant's
7   breach of some other legal duty and the emotional
8   distress is proximately caused by that breach of duty."
9   <u>Potter v. Firestone Tire & Rubber Co.</u>, 6 Cal. 4th 965,
10  985 (1993).  Without an underlying breach of duty by
11  Defendants, there can be no recovery for any emotional
12  distress Mr. Malone may have suffered.  <u>Id.</u>  Thus,
13  summary judgment for Defendants on this claim is
14  appropriate.

15

16  **C.   Plaintiffs Fail to Demonstrate a Genuine Issue of**
17        **Material Fact Exists as to the Loss of Consortium**
18        **Claim**

19        A claim for loss of consortium under California law
20  has four elements:  (1) a valid and lawful marriage
21  between the plaintiff and the person injured at the time
22  of the injury; (2) a tortious injury to the plaintiff's
23  spouse; (3) loss of consortium suffered by the plaintiff;
24  and (4) the loss was proximately caused by the
25  defendant's act.  <u>Hahn v. Mirda</u>, 147 Cal. App. 4th, 740,
26  746 (2007) (internal citation omitted).  As Defendants
27  are not liable for the underlying tort to Mrs. Malone,
28

1   Mr. Malone may not recover on his loss of consortium

2   claim.   Thus, summary judgment for Defendants on this

3   claim is appropriate.

4

5   **D.   Plaintiffs' Expert Declaration Does Not Create a**

6        **Genuine Issue of Material Fact**

7        Plaintiffs also submitted, as part of their

8   Opposition, an expert declaration from Brad P. Avrit on

9   issues of safety and the reasonableness of Defendants'

10  behavior ("Avrit Declaration").   (Opp'n Ex. E.)

11  "Assertions in expert affidavits do not automatically

12  create a genuine issue of material fact."   <u>Rebel Oil Co.,</u>

13  <u>Inc. v. Atlantic Richfield Co.</u>, 51 F.3d 1421, 1440 (9th

14  Cir. 1995).   Instead, the inference to be drawn from

15  expert affidavits must be "sufficient to support a

16  favorable jury verdict."   <u>Id.</u> (citing <u>Anderson</u>, 477 U.S.

17  at 248-50).   The Court does not find that the conclusions

18  in Mr. Avrit's declaration create any issues of material

19  fact that would bar summary judgment.   Mr. Avrit's

20  declaration looks at the same facts the Court did but

21  comes to a different conclusions, finding that Defendants

22  lacked reasonable inspection procedures and should have

23  found the depression on the Valley golf course[4].   (Avrit

24

25  ───────────────

26        [4] Mr. Avrit also reaches a number of unnecessary
    conclusions in his declaration, such as his assertion
27  that the depression that existed on the Valley golf
    course "could cause a person to lose balance and fall."
28  (Avrit Decl. ¶ 7.)

1   Decl. ¶ 10.)  Mr. Avrit's declaration thus fails to raise
2   a genuine issue of material fact.

3

4   **E.   Plaintiffs' Request for Additional Time is Improper**
5        On the penultimate page of their Opposition,
6   Plaintiffs request additional time to complete further
7   depositions before the Court rules on the Motion.  (Opp'n
8   at 24; Rudorfer Decl. ¶ 11.)  Plaintiffs' request fails
9   to show that "for specified reasons [Plaintiffs] cannot
10  present facts essential to justify its opposition" as
11  required by Federal Rule of Civil Procedure 56(f).
12  Plaintiffs have indicated neither why they have been
13  unable to take certain additional depositions nor how
14  these new depositions would provide any essential
15  information to support their case.  The request for
16  additional time is therefore denied.

17

18  **F.   Plaintiffs' Claim of Defendants' Spoliation of**
19  **Evidence is Without Merit and Improper**
20       Finally, Plaintiffs assert that Defendants "destroyed
21  all the evidence" after Mrs. Malone's fall and are
22  "trying to use that to [their] benefit," all of which
23  "creates an inference adverse to" Defendants.  (Opp'n at
24  24.)  In the same paragraph, Plaintiffs note that
25  Defendants took eight photographs of the depression
26  before they filled in the hole so no one else was hurt by
27  it.  (Id.)

28

 1        In support of their spoliation argument, Plaintiffs

 2   argue that, under Byrnie v. Town of Cromwell, Bd. of

 3   Educ., 243 F.3d 93 (2nd Cir. 2001), the destruction of

 4   evidence by a defendant may allow a plaintiff to survive

 5   summary judgment.  (Opp'n at 24.)  The fact of Byrnie are

 6   dissimilar from the instant case and do not help

 7   Plaintiffs.  In Brynie, the plaintiff filed an action for

 8   against the defendant for its failure to hire him as a

 9   teacher, arguing disparate treatment on the basis of his

10   age and gender.  Brynie, 243 F.3d at 98.  In the course

11   of discovery, it came out that the defendant had

12   affirmatively destroyed almost all of the documents

13   created at the time the hiring decision was made.  Id. at

14   109-10.  The defendant was required under federal

15   regulation to retain such documents for at least two

16   years, and should have retained the documents as soon as

17   it knew that Brynie was concerned with the outcome and

18   would be pursuing litigation, something he made clear to

19   defendants soon after the process was complete.  Id. at

20   109.

21

22        The willful destruction of documents anticipated to

23   be necessary to litigation, the scenario in Brynie and

24   most spoliation cases, is very different from the

25   circumstances of the present case, where Defendants fixed

26   a dangerous condition on their golf course which had been

27   brought to their attention.  Defendants' behavior here

28

1  comes closer to being a subsequent remedial measure,
2  behavior which is specified as a statutory evidentiary
3  exclusion in order to encourage it.  <u>See</u> Fed. R. Evid.
4  407; <u>see also</u> Fed. R. Evid. 407 advisory committee notes
5  (1972) ("The other, and more impressive, ground for
6  exclusion rests on a social policy of encouraging people
7  to take, or at least not discouraging them from taking,
8  steps in furtherance of added safety").

9

10      The size and location of the hole which Mrs. Malone
11  fell into are not material facts at issue in this case,
12  so Defendants did not destroy any critical disputed
13  evidence.  Plaintiffs' accusation is thus a baseless
14  attack on Defendants for their efforts to mitigate the
15  problem on the golf course and prevent any future harm to
16  their patrons.  This argument thus has no bearing on the
17  Court's judgment.

18

19                      **IV. CONCLUSION**
20      For the foregoing reasons, the Court GRANTS the
21  Motion.

22

23      **IT IS SO ORDERED.**

24

25  Dated: <u>October 29, 2010</u>    _____
26                              VIRGINIA A. PHILLIPS
                               United States District Judge
27

28

                              19